UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LENORA BONDS, individually ) | |
| and as Independent Administrator ) | |
| of the Estate of TERRANCE HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 16 C 5112 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| ) | |
| CITY OF CHICAGO, a municipal ) | |
| Corporation, and UNKNOWN ) | |
| OFFICERS, ) | |
| Defendants. ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Lenora Bonds filed a motion to reconsider pursuant to Federal Rule of Civil

Procedure 59(e), asking the court to vacate or reconsider its January 11, 2017 order granting

Defendant the City of Chicago's Motion to Dismiss Bonds' complaint [Dkt. 27]. For the reasons

set forth below, Bonds' motion to reconsider is granted, the prior order [Dkt. 26] is vacated, and

the court again grants Defendant's motion to dismiss, although on different grounds than those

originally articulated by the court in its prior order. Bonds is granted leave to file an amended

complaint in accordance with the terms of this ruling.

## I.     BACKGROUND

Bonds' son, Terrance Harris ("Terrance"), was killed by Chicago police officers on

October 23, 2013. According to the allegations of Bonds' federal court complaint [Dkt. 1],

Bonds called the police to her home seeking assistance with Terrance, who had been diagnosed

with a mental health issue. Bonds further alleges that Terrance was alone and unarmed when

police entered their shared home, but that within a short period of time, Terrance had been shot

28 times through a wall.  Bonds also alleges that her son was denied proper medical care both before and after his death, that they were subjected to an improper search and seizure, and that after Terrance was killed, Bonds was taken to a Chicago police station and interrogated.

About 18 months after Terrance's death, on April 14, 2015, Bonds filed a *pro se* action in the Circuit Court of Cook County against the Chicago Police Department.[1]  (Dkt. 10-1).  In that action, Bonds alleged "wrongful death, [r]estitution of home and undue trust recompense, and compensation of $80,000.00."  (*Id.*)  However, Bonds apparently failed to appear before the court at a status hearing, and her case was dismissed less than two months later, on June 9, 2015, for want of prosecution. (Dkt. 16, p. 7; Dkt. 16-2).

On May 10, 2016, Bonds filed the instant action (this time with the assistance of counsel) against the City of Chicago and Unknown Officers.  In her complaint, Bonds sets forth five counts for relief:  four counts under 42 U.S.C. § 1983 (excessive force, false arrest, unlawful search and seizure, and denial of medical care), each alleging a *Monell* unconstitutional policy and practice claim against the City of Chicago; and one count under Illinois state law for damage to property.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant moved for the dismissal of Bond's complaint [Dkt. 9].  The court granted the motion on the basis that the Illinois savings statute, 735 ILCS 5/13-217, was inapplicable and thus could not be used to "revive" in federal court Bonds' state court action.  [Dkt. 26].  Now, in her motion for reconsideration, Bonds

---

[1]  *See Lenora Bonds v. Chicago Police Department*, Case No. 2015 L 003850, in the Circuit Court of Cook County, Illinois.  Technically, Bonds should have named the City of Chicago as the defendant because the Chicago Police Department does not enjoy a legal existence independent of the City of Chicago and cannot be sued as a separate entity.  *See Chan v. Wodnicki,* 123 F.3d 1005, 1007 (7th Cir.1997); *Sabovcik v. Castillo*, No. 2:08-CV-279RM, 2009 WL 1285889, at *2 (N.D. Ind. May 5, 2009).  This issue is discussed more fully *infra*, p. 12.

argues that the court incorrectly applied the 1995 version of the savings statute, instead of the pre-1995 version, and that this failure was a manifest error of law. Defendant does not dispute that the court applied an incorrect version of the statute in its analysis, but argues that the court's ruling was nevertheless correct on other grounds.

## II.    LEGAL STANDARDS

### A.    Rule 59(e) Motion to Reconsider

Motions to reconsider serve the limited function of allowing the court to correct manifest errors of law or fact or to consider newly discovered material evidence. *Seng-Tiong Ho v. Taflove,* 648 F.3d 489, 505 (7th Cir. 2011). A "manifest error" occurs when "the [c]ourt has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990). "The decision whether to grant or deny a Rule 59(e) motion is entrusted to the sound judgment of the district court." *In re Prince,* 85 F.3d 314, 324 (7th Cir. 1996) (internal citations omitted).

In her Rule 59(e) motion, Bonds argues that the court made a manifest error of law when it granted Defendant's motion to dismiss based on the 1995 version of the Illinois savings statute, since that statute was ruled unconstitutional in 1997 by *Best v. Taylor Mach. Works*, 689 N.E.2d 1057 (Ill. 1997). The court agrees that its reliance on an incorrect version of the Illinois savings statute was a manifest error of law.

Some background on the Illinois savings statute. Prior to 1995, the Illinois savings statute included within its ambit causes of action dismissed for want of prosecution. It stated:

> In the actions specified in Article XIII of this Act or any other act or contract where the time for commencing an action is limited, if judgment is entered for the plaintiff but reversed on appeal, or if there is a verdict in favor of the plaintiff and, upon a motion in arrest of judgment, the judgment is entered against the plaintiff,

or the action is voluntarily dismissed by the plaintiff, **or the action is dismissed for want of prosecution**, or the action is dismissed by a United States District Court for lack of jurisdiction, or the action is dismissed by a United States District Court for improper venue, then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff, his or her heirs, executors or administrators may commence a new action within one year or within the remaining period of limitation, whichever is greater, after such judgment is reversed or entered against the plaintiff, or after the action is voluntarily dismissed by the plaintiff, or the action is dismissed for want of prosecution, or the action is dismissed by a United States District Court for lack of jurisdiction, or the action is dismissed by a United States District Court for improper venue. 735 ILCS 5/13-217.

In 1995, the savings statute was amended by the Illinois Civil Justice Reform Amendments of 1995. *See* Illinois P.A. 89-7 (the "Tort Reform Act"), at pp. 21-22. One effect of this amendment was to exclude from the savings statute's protective arm actions that had been dismissed for want of prosecution. However, in 1997, the Tort Reform Act was ruled unconstitutional and struck down in its entirety in *Best,* and this resulted in a return of the savings statute to its pre-1995 form (shown above). The court, in its January 11, 2017 order, incorrectly applied the 1995 version of the savings statute in its analysis and found, on this basis alone, that Bonds' federal cause of action—filed after the expiration of the applicable statutes of limitations—could not be "saved" by the savings statute and thus was untimely. Because the court's analysis rested on a misapplication of the law, that order is vacated. The court now reconsiders in its entirety the defendant's motion to dismiss.

**B.      Rule 12(b)(6)**

Defendant seeks dismissal of Bonds' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) allows a defendant to move for dismissal of a complaint if it "fail[s] to state a claim for which relief can be granted." The court must accept all facts pleaded in the complaint as true, and must draw all reasonable inferences in the plaintiff's favor. *INEOS Polymers, Inc. v. BASF Catalysts,* 553 F.3d 491, 497 (7th Cir. 2009). In general, "the complaint

need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief,'" *E.E.O.C v. Concentra Health Services, Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (quoting Rule 8(a)), with sufficient facts to put the defendant on notice "of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007) (citations omitted). To survive a motion to dismiss under Rule 12(b)(6), the complaint need not present particularized facts, but "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic,* 550 U.S. at 555).

A statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c)(1). Dismissing a claim as untimely at the pleading stage is an "unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP,* 559 F.3d 671, 674 (7th Cir. 2009). "[A] federal complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense." *Hollander v. Brown,* 457 F.3d 688, 691 n. 1 (7th Cir. 2006). But, a claim may be dismissed as untimely at the motion to dismiss stage if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *United States v. Lewis,* 411 F.3d 838, 842 (7th Cir. 2005).

Defendant's motion to dismiss alleges that all five counts of Bonds' federal complaint, and the entirety of her state court complaint, are barred by applicable statutes of limitations. Section 1983 claims arising in Illinois are governed by a two-year statute of limitations. *Kelly v. City of Chicago,* 4 F.3d 509, 511 (7th Cir. 1993); *Ashafa v. City of Chicago,* 146 F.3d 459, 462

(7th Cir. 1998).[2]  The statute of limitations relative to Bonds' state law property damage and wrongful death claims against a municipality is one year.  *See* 745 ILCS 10/8-101(a); *Fender v. Town of Cicero*, 807 N.E.2d 606, 609 (Ill. App. Ct. 2004).

## III.    LEGAL ANALYSIS

### A.    Bonds' State Court Lawsuit and Applicable Statutes of Limitations

Defendant's first argument is that Bonds' claims in both state and federal court are time-barred and must be dismissed with prejudice.  To navigate through this multi-layered issue, an examination of the nature of Bonds' state court claims and applicable statutes of limitations is paramount.

Bonds' son was killed on October 23, 2013.  Bonds filed her state court action on April 14, 2015, and alleged as follows:

> Chicago Police killed [m]y son Terrance L. Harris in my home by shots fired thr[ough] the basement wall.  Wrongful death, Restitution of home and undue trust recompense, and compensation of $80,000.00."

Defendant asserts that Bonds' complaint merely sets forth Illinois state law wrongful death and property damage claims against a municipality, to which a one-year statute of limitations period applies.  Bonds, however, contends that her complaint includes not only state law claims but also a federal law excessive force claim because it was filed against the Chicago Police Department and alleges facts indicating the use of excessive force.  Whether Bonds' state court claims are viewed as arising under Illinois state law, or as also arising under federal law, is critical to the outcome of this case.

---

[2] 42 U.S.C. § 1983 does not contain a statute of limitations..  For this, courts look to the personal injury laws of the state in which the injury occurred.  *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993).  Illinois has a two-year statute of limitations for personal injury claims.  *See* 735 ILCS 5/13–202.

Bonds filed her state court complaint *pro se*.   District courts are to construe *pro se* complaints liberally and to apply to them less stringent standards than would be applied to complaints drafted by lawyers.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*pro se* complaints are held to less stringent standards than pleadings drafted by lawyers); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (district courts are to construe *pro se* complaints liberally).  Bonds maintains that her state court complaint sufficiently apprised Defendant that civil rights claims were within its ambit because she accused the Chicago Police Department of having wrongfully killed her son through the walls of her basement.  Under the liberal pleading standards afforded a *pro se* plaintiff, the language of the state court complaint sufficiently encompasses an excessive force claim and not, as Defendant asserts, simply a state court wrongful death claim.

Bonds' cause of action accrued on October 23, 2013—the date on which her son died— so this is the date that triggered the applicable statutes of limitations.[3]  As noted above, the applicable statute of limitations for a state law damage to property claim and wrongful death claim asserted against a municipality is one year.  A civil rights claim asserted pursuant to 42 U.S.C. § 1983,  whether raised in state or federal court, is subject to a two-year statute of limitations.  Since Bonds filed her state court complaint approximately a year and seven months

---

[3] Having determined the applicable statutes of limitations, the court must also establish when Bonds' cause of action accrued.  Federal law governs the date of accrual for a Section 1983 action.  *Wallace,* 549 U.S. at 388.  A Section 1983 claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated."  *Kelly,* 4 F.3d at 511 (quoting *Wilson v. Giesen,* 956 F.2d 738, 740 (7th Cir. 1992)).  Determining the accrual date of a Section 1983 claim proceeds in two steps.  First, the court identifies the injury.  *See Hileman v. Maze,* 367 F.3d 694, 696 (7th Cir. 2004).  Next, it determines the date "on which the plaintiff could have sued for that injury. That date should coincide with the date the plaintiff 'knows or should know' that her rights were violated."  *Id*. (citing *Kelly,* 4 F.3d at 511) (internal citations omitted).  In this case, Bonds' cause of action accrued on October 23, 2013, the date her son was killed, because all of Bonds' allegations—whether in state or federal court—arose from the circumstances surrounding Terrance's death.  The date of the injury coincides with the date Plaintiff knew or should have known that her rights, or her son's rights, were violated.

after her son's death, her state law property damage and wrongful death claims were untimely from the very beginning, but her excessive force claim was not.

### B. Bonds' Federal Lawsuit and the Illinois Savings Statute

Bonds filed her federal lawsuit on May 10, 2016. This was two and a half years after Bonds' cause of action accrued, but less than a year after her state court action was dismissed for want of prosecution. Accordingly, Bonds asserts that her current action is made timely by the application of the Illinois savings statute, which grants a plaintiff an absolute right to refile certain timely-filed actions within one year of judgment, regardless of whether the applicable statute of limitations has expired in the interim.

The purpose of the savings statute is "to facilitate the disposition of litigation upon the merits and to avoid its frustration upon grounds that are unrelated to the merits." *DeClerck v. Simpson,* 577 N.E.2d 767, 769 (Ill. 1991) (citations omitted); *Hinkle by Hinkle v. Henderson*, 85 F.3d 298, 302 (7th Cir. 1996). Section 13-217 is termed "a savings statute" or "revival statute" because it "revives" a plaintiff's earlier, timely-filed complaint beyond the limitations period, where no adjudication on the merits has been obtained and the complaint has been dismissed for procedural reasons. *Merchantile Holdings, Inc. v. Feldman*, 630 N.E.2d 965, 968 (Ill. App. Ct. 1994). The court already has determined that Bonds' property damage claim was untimely when she filed her state court action; thus the savings statute will not operate to revive this claim and render it timely in federal court. Accordingly, Count V of the complaint is dismissed with prejudice. However, Bonds' excessive force claim was timely when filed in state court and thus, assuming no other impediment, the savings statute revives this claim and renders it timely in federal court.

## C.      Failure to Serve the Proper Defendant

Defendant argues that Bonds' complaint cannot fit within the parameters of the savings statute because Bonds never properly served the City of Chicago.  Defendant points out that Bonds named the Chicago Police Department, which is not an entity capable of being sued, and then neglected to serve a single defendant (properly named or otherwise).  Defendant also contends that had Bonds' complaint not been dismissed for want of prosecution, it would have been dismissed pursuant to 735 ILCS 5/2-619(2) due to the failure to name the proper party.  *See Reese v. Chicago Police Dept.*, 602 F. Supp. 441, 443 (N.D. Ill. 1984) (when Chicago Police Department is named as a defendant, the proper remedy is to dismiss it as a party).  Such a dismissal, Defendant argues, would have been an adjudication on the merits that would have precluded an application of the savings statute.  According to Defendant, Bonds only avoided the outcome of an adjudication on the merits by having her suit dismissed for want of prosecution.

The dismissal order in the state court action does not suggest that the action was dismissed due to a failure to serve, or to name, the proper defendant.  The dismissal order simply states that the case was called, and that it was "dismissed for want of prosecution."  (Dkt. 16-2). Nothing in the record suggests another reason for the dismissal, although Bonds contends that her case was dismissed because she failed to appear at a status hearing (after failing to understand she needed to appear).  Bonds' *pro se* status certainly allows for this possibility. (Dkt. 16, p. 7).  Further, the fact that Bonds' lawsuit was dismissed less than two months after she filed it also suggests that the dismissal was caused by something other than her failure to serve the defendant.  *See Powell v. Lewellyn*, 976 N.E.2d 1106, 1108 (Ill. App. Ct. 2012) (a plaintiff must be given a reasonable amount of time to obtain service on a defendant or defendants).

That Defendant had no notice of Bonds' state court lawsuit is no impediment to the savings statute's application. The savings state specifically enumerates six grounds for its application, including dismissal for want of prosecution. While the court recognizes a line of cases suggesting that reasonable diligence in serving the defendant is required in order for a plaintiff to avail itself of the savings statute under certain circumstances, such a situation does not present itself today. *See Mares v. Busby*, 34 F.3d 533, 536 (7th Cir. 1994) (noting, without expressing an opinion on the matter, that dismissal for failure to properly serve is not among the stated situations covered by the savings statute); *Catlett v. Novak,* 506 N.E.2d 586, 590 (Ill. 1987) (noting tension between § 13-217 and Illinois Supreme Court Rule 103(b) requiring reasonable diligence as to service of process); *Hinkle*, 85 F.3d at 305 (remanding case where district court failed to consider whether the plaintiff's failure to comply with Rule 103(b) mandated a dismissal even if the savings statute were found applicable to the medical malpractice statute of repose); *Fowler v. Kinsella,* No. 98–C9599, 1990 WL 19856 (N.D. Ill. 1990) (Illinois savings statute did not apply in case where Fed. R. Civ. P. 4(j) (requiring service within 120 days) had not been satisfied). So, while there may be situations in which a plaintiff's failure diligently to serve the defendant serves as a bar to an application of the savings statute, such is not the case here. Defendant may revisit this issue later, in the event it discovers evidence indicating a lack of reasonable diligence as to service of process. In the meantime, Bonds' state court action is effectively a dismissal without prejudice. *See Twardowski v. Holiday Hospitality Franchising, Inc.,* 748 N.E.2d 222, 226 (Ill. App. Ct. 2001) (complaint's dismissal for want of prosecution was a dismissal without prejudice).

**D.      Refiling under the Illinois Savings Statute**

Section 13-217 allows a plaintiff to refile an action within one year, or within the remaining statute of limitations period, whichever is greater.  Although the savings statute does not say so, the Illinois Supreme Court has interpreted it to permit only a single refiling of the same cause of action.  *Timberlake v. Illini Hospital,* 676 N.E.2d 634, 636 (Ill. 1997); *Flesner v. Youngs Development Co.,* 582 N.E.2d 720 (Ill. 1991); *Ladien v. Bd. of Trustees, Univ. of Illinois*, No. 93 C 6573, 1994 WL 395078, at *4 (N.D. Ill. July 27, 1994).  Defendant claims that Bonds' federal lawsuit does not constitute a "refiling" of the same cause of action because the two complaints differ in both their legal theories and the claims they bring.  Defendant asserts that "[n]othing in the original complaint, alleging only 'wrongful death' and property damage, would have put the City on notice that it would one day be sued under a *Monell* theory for its policies." (Dkt. 10, p. 9).

Illinois courts have held that, for the purposes of § 13–217, a complaint is deemed to be refiled where it contains the same cause of action as defined by *res judicata* principles.  *See D'Last Corp. v. Ugent*, 681 N.E.2d 12, 16 (Ill. App. Ct. 1997).  *Res judicata* bars a further suit if "the same facts were essential to maintain both actions" or if "a single group of operative facts gives rise to the assertion of relief."  *Rodgers v. St. Mary's Hosp.,* 597 N.E.2d 616, 621 (Ill. 1992) (internal quotations and citations omitted); *Evans ex rel. Evans v. Lederle Labs.*, 167 F.3d 1106, 1113 (7th Cir. 1999).  The bar extends not only to what was actually decided in the prior action, but also to those matters that could have been decided.  *Richter v. Prairie Farms Dairy, Inc.*, 53 N.E.3d 1, 8 (Ill. 2016).

Construing Bonds' claims in the light most favorable to her, the court finds that the allegations of both complaints arose from a single group of operative facts giving rise to the

request for relief: the shooting of Bonds' son by the Chicago Police Department after Bonds called the police seeking assistance. *See Gayton ex rel. Estate of Gayton v. Vill. of Lansing*, No. 04 C 605, 2004 WL 2059503, at *2 (N.D. Ill. July 30, 2004) (discussing similarity of complaints under the one-refiling rule); *Gonzalez v. Thorek Hosp. & Med. Center*, 570 N.E.2d 309, 314 (Ill. 1991) (finding second filing was for the same cause of action as the original filing for purposes of one-refiling rule). That the facts related to Terrance's death are more fleshed out in the federal complaint does not alter this conclusion. Count I (excessive force), Count II (false arrest), Count III (unlawful search and seizure) and Count IV (denial of medical care) are assertions of different theories of relief arising out of facts that are essential to both actions. *See Mabry v. Boler*, 972 N.E.2d 716, 722 (Ill. App. Ct. 2012).[4]

Defendant makes much of the fact that Bonds incorrectly sued the Chicago Police Department in her state court suit. However, the court finds no fatal lack of identity as to the parties. *See Flynn v. Allis Chalmers Corp.*, 634 N.E.2d 8, 10 (Ill. App. Ct. 1994) (identity of the defendant is essential to the determination that the refiling be of the same cause of action). While it is true that the Chicago Police Department may not properly be sued as a distinct entity, it is clear that Bonds sought to hold the police accountable in each action. Identity of the party defendant is not defeated by Bonds' mistake of naming the "Chicago Police Department" in her state court action, especially where it appears that the state court suit was dismissed for want of prosecution well before Bonds even had an opportunity to correct the identity of the defendant. It is important to bear in mind that the stated purpose of the savings statute is "to facilitate the

---

[4] However, the court questions the ability of Bonds to bring a false arrest action on her own behalf given her stated intention to bring this action as Administrator of her son's estate. Insofar as Bonds is being given leave to amend her complaint, this claim should be eliminated or the rationale for including it in this case should be made clear.

disposition of litigation upon the merits and to avoid its frustration upon grounds that are unrelated to the merits." *DeClerk*, 577 N.E.2d at 769.

However, Bonds' federal action identifies for the first time "Unknown Officers" as defendants. By refiling the complaint against individual defendants (as of yet unknown) in their official capacities, Bonds has added new parties that are not part of the original cause of action. The savings statute does not apply to these parties, and the claims against individual, unknown police officers are barred by the two-year statute of limitations. *See Flynn,* 634 N.E.2d at 10 (Black's Law Dictionary definition of "action" indicates that the identity of the defendant is an essential element of an "action" and "[t]hus, a complaint against a different defendant, even if based on the same facts supporting a right to relief, would constitute a separate "action"); 51 Am. Jur.2d Limitations of Actions § 256 ("A savings statute does not apply if the parties in the new action are not the same as the ones in the prior action, if the new action is brought against a different defendant than was the first one, or an attempt is made to add defendants not sued in the original action."). Defendant's motion to dismiss as to individual police officers is granted.

### E. *Monell* Claims pursuant to 42 U.S.C. § 1983

Section 1983 provides a cause of action against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A municipality is liable under § 1983 "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. 658, at 694. Municipal liability can rest on: (1) an express policy that caused the constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal

policy, is so permanent and well settled that it constitutes a policy; or (3) that the constitutional

injury was caused by a person with final policymaking authority. *Lewis v. City of Chi.*, 496 F.3d

645, 656 (7th Cir. 2007).

To survive a motion to dismiss a *Monell* claim, a plaintiff must "plead facts that show

'that there is a true municipal policy at issue, not a random event. If the same problem has arisen

many times and the municipality has acquiesced in the outcome, it is possible (though not

necessary) to infer that there is a policy at work.'" *Liska v. Dart*, No. 13 C 1991, 2014 WL

3704635 at *10 (N.D. Ill. July 23, 2014). To meet this standard, the plaintiff must "'provide

some specific facts' to support the legal claims asserted in the complaint." *Brown v. Dart*, No.

14-CV-07945, 2015 WL 4035568, at *2 (N.D. Ill. June 30, 2015) (citing *McCauley v. City of

Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). There is no bright-line rule for determining when

conduct rises to the level of policy or practice but "it is clear that a single incident—or even three

incidents—do not suffice." *Wilson v. Cook Cnty.,* 742 F.3d 775, 780 (7th Cir. 2014); *see also

Palka v. City of Chicago,* 662 F.3d 428, 435 (7th Cir. 2011) ("two alleged instances of

discrimination do not constitute a widespread pattern or practice sufficient to subject the City to

liability"); *Nettles-Bey v. Burke,* No. 11 C 8022, 2015 WL 4638068, at *12 (N.D. Ill. Aug. 4,

2015) ("Isolated incidents of allegedly unconstitutional conduct are insufficient to establish a

widespread practice."); *Falk v. Perez,* 973 F.Supp.2d 850, 864 (N.D. Ill. 2013) ("[B]y alleging

'widespread practices,' 'customs,' and 'unofficial policies,' plaintiff merely states boilerplate

legal conclusions that are the elements of her *Monell* claim."). A plaintiff also must be able to

show that the municipality's policy was the "moving force" behind the alleged injury; that is, a

plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation

of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 404 (1997); *see*

*also City of Canton v. Harris,* 489 U.S. 378, 385 (1989); *Teesdale v. City of Chi.,* 690 F.3d 829, 833 (7th Cir. 2012). The Court reviews Count I under this standard.

Count I of the complaint is premised upon the following facts: Bonds called the police to her home on the evening of October 23, 2013 to ask for assistance with her son who was acting "strange." (Cmpt., Dkt. 1, ¶ 9). Police arrived around 30 minutes later, and Bonds went outside to speak with them and explain that while everything was fine and no one was hurt, her son was not behaving normally. (*Id*., ¶¶ 10, 11, 12). Several officers proceeded to the basement, where Terrance was hiding by the furnace, and surrounded the area where he was hiding, although the police and Terrance were separated by thin walls. (*Id*., ¶¶ 12-14). Police opened fire through the thin walls and struck Terrence 28 times. (*Id*., ¶¶ 15-16). Terrance was unarmed and presented no threat to anyone. (*Id*., ¶ 17).

Count I contends that Defendant maintained an unconstitutional policy and practice that was the proximate cause of Terrance's death. This includes a failure to monitor and train officers regarding: (1) the use of deadly force on suspects who are suffering from mental health or psychiatric health issues; (b) the use of deadly force when confronting suspects who are either not armed or armed with something other than a firearm, or otherwise present no justifiable threat to warrant the use of deadly force; and (c) the manner in which officers should interact with and help suspects who are suffering from mental health issues so prevent the need to resort to the unnecessary use of force. Additionally, Bonds alleges that a code of silence contributed to her son's death because it emboldened officers to believe that they could act excessively and cover up their actions without fear of scrutiny.

The parties dispute the factual sufficiency of Bonds' *Monell* claims, particularly as to the excessive force claim (Count I). Through her briefs pertaining to the ruling today, Bonds already

has indicated a desire to amend her complaint to include additional factual information regarding Count I. The parties neglect to discuss the other three counts, but they are factually thin and do not appear to meet the standards set forth above. *See Brooks,* 578 F.3d at 581 ("[S]ome factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the Bonds' claim."). Accordingly, Counts I-IV of the complaint are dismissed without prejudice, and Bonds is granted leave to file an amended complaint against the City of Chicago within 28 days.

As a final housekeeping note, upon amendment, Bonds shall cure any defects with respect to standing or otherwise inform the court regarding her status as Administrator of her son's estate. *See Turner v. Jackson Park Hosp.*, 264 F. App'x 527, 529 (7th Cir. 2008) (In Illinois, personal injury suits survive the victim's death for the benefit of the victim's estate, but only the administrator of the estate can pursue the claims). Any failure on Bonds' part to have herself appointed as the administrator of her son's estate, once cured, will relate back to the time of the original pleading. *Nagel v. Inman*, 931 N.E.2d 1264, 1267 (Ill. App. Ct. 2010).

## IV.    CONCLUSION

Upon reconsideration of the court's January 11, 2017 order, Defendant's motion to dismiss Bonds' complaint is granted. Counts I-IV of the complaint are dismissed without prejudice. Count V is dismissed with prejudice. All claims against Unknown Officers are dismissed with prejudice. Bonds is granted leave to submit an amended complaint by March 22, 2017 as to Counts I-IV against the City of Chicago only.

Date:   February 22, 2017

_____/s/_____

Joan B. Gottschall
United States District Judge
