IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Lenora Bonds, individually and As Independent Administrator of the Estate of Terrance Harris, | ) ) ) ) | Case No. 16 C 5112 |
| Plaintiff, | ) ) ) | Judge Gottschall |
| vs. | ) ) ) | Magistrate Judge Kim |
| City of Chicago, a municipal Corporation, and Unknown Officers, | ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S REPLY
IN SUPPORT OF ITS MOTION TO DISQUALIFY**

Defendant City of Chicago ("the City"), by and through its attorney, Mark A. Flessner, Corporation Counsel for the City of Chicago, hereby replies to Plaintiff's Response in Opposition to Defendant City of Chicago's Motion to Disqualify Counsel and, in support thereof, states as follows:

**ARGUMENT**

Plaintiff's response to the City's motion to disqualify counsel is unpersuasive and Defendant's motion should be granted for four reasons. First, *Paine* is factually similar, concerns the same matter, and the litigation occurred during the same relevant time as this case. Second, the City did not waive the right to disqualify Mr. Marsh. Third, Mr. Marsh's lack of memory regarding *Monell* litigation, training, and confidential information does not cure the conflict. Finally, Plaintiff's response shows that Mr. Marsh already shared information about the Crisis Intervention Team ("CIT") and how the Chicago Police Department ("CPD") handles mental health issues with co-counsel.

1

I.  **Mr. Marsh's Representation of Plaintiff in This Case Violates Rule 1.11 Because the Representation Concerns the Same Matter and is Within the Same Relevant Timeframe.**

An attorney may not represent a party in a lawsuit if the attorney previously represented an opposing party "'in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client[.]'" *Watkins v. Trans Union, LLC*, 869 F.3d 514, 519 (7th Cir. 2017) (*quoting* the Indiana Rule of Professional Conduct 1.9 which followed the American Bar Association Model Rule) (When evaluating whether an ethical violation has occurred, courts in the Northern District of Illinois apply the Model Rules of Professional Conduct adopted by the American Bar Association (the "Rules"). L.R. 83.50.). Two matters are substantially related when they "'involve the same transaction' [which] is determined by an inquiry into whether the matters are factually related." *Watkins*, 869 F.3d at 520. For example, the Seventh Circuit determined an attorney for plaintiff should not be disqualified where the attorney in that case represented the defendant four years prior to the events that led to the plaintiff's complaint and the defendant relied on precedent that predated the applicable ethical rules. *Id.* at 517-18, 525.

However, this case involves circumstances much different than the attorney's position in *Watkins*. Here, Plaintiff tries to obfuscate the issue by arguing that the factual issues the City raises are only general subject matter and therefore not part of the same factual matter, but this is not the case. ECF No. 103 at 4. In the case at bar, Plaintiff alleges that the City failed to implement policies regarding mental illness and the CIT program, failed to investigate, supervise, and discipline police officers, and that there is an existence of the code of silence. *See* ECF No. 100-6 at ¶¶ 47-63. These are factual allegations, not general legal theories. Mr. Marsh previously represented the City or Chicago Police officers in litigation that contained the same factual allegations. For example, in *Elrod*, *Abner*, *Burton, Clark*, *Irvin*, and *Troy Clark*, the plaintiffs alleged that the Chicago Police

have a policy of failing to train, supervise, and discipline its police officers. *See* ECF No. 100-4 at 6-7, 37, 68-70, 91-92, 118. In *Gilfand* the plaintiff not only alleged a failure to train, supervise, and discipline police officers, but also specifically alleged a code of silence within CPD. *Id.* at 127-30. This conflict is even more evident when comparing Plaintiff's case to Mr. Marsh's representation for the City in *Paine*.

### a. *Paine* regards the same factual matter as this case.

Plaintiff fails to address and differentiate the factual matters between *Paine* and the underlying incident because Plaintiff cannot overcome that the two cases are substantially related and are the same matter. In this case, Plaintiff alleges that the City failed to install and develop the CIT program, failed to supervise and discipline police officers, and fostered a code of silence within CPD. *See* ECF No. 100-6 at 10. The plaintiff in *Paine* alleged that a woman had a psychiatric episode while in Chicago Police custody. *See* ECF No. 100-5 at 7-8. The complaint further alleged that the City failed to implement policies on how to respond to people experiencing mental health issues, failed to train police officers in how to respond to people experiencing mental health issues, and failed to adhere to its own policies. *Id.* at 11-12. These two cases contain the same specific factual allegations against the City.

### b. The discovery in *Paine* shows that the matters are substantially related even if the *Monell* claim in *Paine* was bifurcated and stayed.

Mr. Marsh's claim that he did not personally and substantially participate in *Monell* discovery in *Paine* because *Monell* was bifurcated and stayed ignores the reality of the discovery that was conducted and does not cure the need for disqualification. During the course of the litigation in *Paine*, extensive investigation and discovery was conducted by the defendants regarding the CIT program. For example, the plaintiff in *Paine* listed CPD witnesses to testify regarding the CIT program, specifically about its "creation, collaboration, and implementation."

3

*See* Plaintiff's First Supplemental 26(a) Disclosure and Notices of Depositions, Attached as Exhibit A at 20.[1] The defendants in *Paine* listed the same witness in their supplemental 26(a) disclosures as having knowledge of the CIT program. *See* ECF No. 100-5 at 140.

Furthermore, not only were witnesses listed in the Fed. R. Civ. Pro. 26(a) disclosures, plaintiff in *Paine* sought depositions of witnesses concerning the CIT program. Exhibit A at 38-50. These witnesses were not just being called to testify about their personal knowledge, but Plaintiff sought 30(b)(6) deposition testimony regarding "mental illness, dealing with persons with mental illness and assessing persons with mental illness." *Id.* at 38-41. Lt. Jeffrey Murphy, the CIT witness listed by both parties in *Paine,* was noticed for a deposition to testify about the CIT program. *Id*. at 48-50. Most importantly, all of the supporting documents that are dated that relate to the CIT discovery in *Paine* are dated after the *Monell* claim was bifurcated and stayed. *Id.* at 37, 39, 43, 46, 49.

Whether Mr. Marsh or Mr. Hurd specifically remember Mr. Marsh's involvement regarding mental health issues in *Paine* has no bearing in the analysis regarding disqualification. Plaintiff cites to no authority that supports the proposition that if an attorney does not remember the subject aspect of representation then there is no conflict. The importance of this is illustrated by the fact that neither Mr. Marsh's declaration nor Mr. Hurd's declaration mention that the CIT program was specifically part of the discovery in *Paine* at all. *See* ECF Nos. 103-1, 103-4. The reality is, as Mr. Hurd admits in his declaration, the factual allegations in *Paine* concerned CPD's policies and procedures related to mental health, which are at issue in this case, and are therefore the same factual allegations. ECF No. 103-4 at ¶ 4.

---

[1] These documents were discovered by the undersigned counsel on January 9, 2020, which occurred after the City's motion was filed. Defendant communicated with Mr. Marsh and made the documents available for his inspection. Mr. Marsh inspected the documents on January 10, 2020.

### c. Through the course of discovery as the City's attorney, Mr. Marsh obtained confidential and privileged information through interviews with the City's agents regarding the CIT program.

The attorney-client privilege "protects communications made in confidence by a corporation's employees to the corporation's attorney, when acting as an attorney and not a business advisor, for the purpose of obtaining legal advice for the corporation." *Babych v. Psychiatric Solutions, Inc.,* 271 F.R.D. 603, 610 (N.D. Ill. Dec. 15, 2010). A 30(b)(6) witness testifies on behalf of and speaks for the organization. *Pugh v. City of Attica, Indiana,* 259 F.3d 619, 627 (7th Cir. 2001). "A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services." Rule 1.9(c), Cmt. 3.

Mr. Marsh was the attorney for the City in *Paine*. Whether he remembers it or not, in order to effectively represent the City Mr. Marsh should have and would have investigated the CIT program by, at the very least, interviewing the witnesses identified in written discovery with knowledge of the CIT program and CPD policies related to mental health. Mr. Marsh would have conducted, or at the very least been a part of, attorney-client interviews regarding the CIT program. Mr. Marsh's responsibility was to evaluate plaintiff's claims and defend the City against the plaintiff's factual allegations. These interviews were confidential and protected by the attorney-client privilege.

Furthermore, any 30(b)(6) deposition that occurred in *Paine* would have been a witness speaking directly for Mr. Marsh's client, the City. It was Mr. Marsh's responsibility as one of the attorneys of record for the City to identify, prepare, present, and defend 30(b)(6) witnesses during the *Paine* litigation. Therefore, the nature of Mr. Marsh's representation of the City shows that Mr. Marsh obtained confidential and privileged information regarding the CIT program through his

5

representation of the City in *Paine* that will be unfairly used to the City's detriment in this litigation.

> **d. When Mr. Marsh left the City of Chicago or how long ago *Paine* occurred is not relevant because both *Paine* and Plaintiff's case concern the same relevant time period.**

Mr. Marsh's focus on how long ago he left the City or how long it has been since he defended a *Monell* allegation is irrelevant. The issue in this case is that Mr. Marsh's representation of the City in *Paine* overlaps both the same subject matter and timeframe as Plaintiff's complaint. *Paine* concerned an incident that occurred in 2006. ECF No. 100-5 at 5. However, the litigation lasted from 2006 through 2013 when the case ultimately settled. *Id*. at 3, 153-55. During the course of the litigation, defendants conducted discovery on the CIT program, which started in 2004. *See* Exhibit A; ECF No. 100-6 at 12. The CIT program was expanded into a city-wide program a month after plaintiff's complaint was filed in *Paine*. ECF No. 100-5 at 3; ECF No. 100-6 at 12.

In this case, although the underlying incident occurred in 2013, Plaintiff places the entire CIT program and the program's history at issue. ECF No. 100-6. Plaintiff's complaint lays out the alleged history of the CIT program, including the reasoning why the program was created and how it was implemented. *Id*. at 11-18. These allegations in Plaintiff's complaint that relate to the CIT program span from the creation of the program in 2004 through the 2017 U.S. Department of Justice Investigation of the Chicago Police Department. *Id*. at 11-15. Therefore, the relevant time period, as defined by Plaintiff's allegations, encompasses the entire time that Mr. Marsh was representing the City in *Paine* on the same factual issues related to the CIT program.

**II. The City Did Not Waive Seeking to Disqualify Mr. Marsh by Not Attempting to Disqualify Mr. Nixa.**

Failing to move to disqualify a previous attorney does not waive a party's ability to move to disqualify any future specific attorneys that later appear on a case. Plaintiff cites to no authority

that supports such argument. Plaintiff's purported support, *Picicco*, does not apply to the situation here. In *Picicco,* the moving party did not seek to disqualify the attorney until 16 months after the attorney's initial appearance. By that point, the attorney already "participated in discovery, attended a pre-trial conference, was carbon copied on correspondence sent to all parties, and filed a Motion for Leave to File Answers to Plaintiff's Third Amended Complaint[,]" all without objection. *Picicco v. City of Calumet City, Illinois,* No. 05 C 2463, 2007 WL 4277425, at *1 (N.D. Ill. Dec. 3, 2007). That is not the case here. Mr. Marsh filed his appearance in this case on October 25, 2019. *See* ECF No. 91. As early as November 4, 2019, Defendants contacted Mr. Marsh's co-counsel regarding potential conflicts issues stemming from Mr. Marsh's previous representations. *See* Emails Regarding Potential Conflicts Issues, Attached hereto as Exhibit B at 3-4.

Furthermore, there is a stark difference between the representative impact of Mr. Nixa's representation of Plaintiff in this case and Mr. Marsh's representation. At the time Mr. Nixa represented Plaintiff, the City was not aware of a case where Mr. Nixa represented the City in litigation that concerned mental health issues and the CIT program. This is not the case with Mr. Marsh. Mr. Marsh directly represented the City in *Paine*, which focused on mental health issues and concerned the CIT program.

### III. Mr. Marsh's Lack of Memory Regarding *Monell* Litigation Training and Internal City Litigation Policies is Self-Serving and Unpersuasive.

When an attorney's "successive clients are a government agency and another client, . . . unfair advantage could accrue to the other client by reason of access to confidential government information about the client's adversary obtainable only through the lawyer's government service." Rule 1.11, Cmt. 4. Mr. Marsh's claim that he does not remember conducting *Monell* discovery in the majority of the cases where he represented the City or Chicago police officers in cases that contained a *Monell* claim or *Monell* allegations has no merit. Plaintiff cites to no authority that

conflicts of interest are in part determined on what the attorney in question remembers. There is no section under Rule 1.11 that a conflict is cured by the lapse in memory of the subject attorney. Plaintiff's argument is unsupported and unpersuasive. Furthermore, Plaintiff's argument should be ignored because Mr. Marsh's involvement necessarily shows substantial participation and the declarations provided by Plaintiff lack foundation.

### a. Whether Mr. Marsh remembers receiving training relating to *Monell* litigation and internal litigation policies misses the mark because of his involvement in *Monell* litigation.

Mr. Marsh, by his own account, represented the City or Chicago police officers in sixteen cases that involved *Monell* allegations. ECF No. 103-1 at ¶¶ 9-10. Contrary to Plaintiff's argument, Mr. Marsh's declaration shows that Mr. Marsh substantially participated in *Monell* litigation while representing the City. Mr. Marsh's participation in *Elrod*, *Abner*, *Burton, Clark*, *Irvin*, *Troy Clark*, and *Gilfand* alone demonstrate his experience representing the City regarding the same factual allegations Plaintiff raises in this case. *See* ECF No. 100-4 at 6-7, 37, 68-70, 91-92, 118, 127-30. The idea that Mr. Marsh was not trained or that Mr. Marsh did not participate in *Monell*-specific litigation because the *Monell* claims were bifurcated and stayed carries no weight. Even if the claim was stayed, Mr. Marsh was still required to investigate the allegations on behalf of his client in order to determine potential liability. As an attorney for the City with an appearance on file, Mr. Marsh cannot now bury his head in the sand and claim he had minimal involvement related to *Monell* claims or *Monell*-related litigation as a whole. Even in cases where Mr. Marsh represented only the individual defendant officers, a joint defense required participation, cooperation, and joint strategy with attorneys for the City regarding the allegations in their entirety. This includes the *Monell* allegations. Therefore, Mr. Marsh's involvement in the same matters is extensive and warrants his disqualification.

8

b. **The declarations Plaintiff provides have no foundation to show Mr. Marsh did not receive training relating to *Monell* litigation and internal litigation policy.**

Plaintiff's declarations from Mr. Nixa and Mr. Hurd do not absolve the evidence of a conflict that warrants Mr. Marsh's disqualification. First, Mr. Nixa's declaration that he is unaware of any "strategies or policies related to *Monell* litigation, discovery, investigation, or settlement[,]" is without foundation and irrelevant. ECF No. 103-2 at ¶ 6. Mr. Nixa was an Assistant Corporation Counsel for the City. *Id.* at ¶ 4. He was never a supervisor and did not have the same duties or responsibilities as Mr. Marsh. Simply put, Mr. Nixa does not have the foundation to give his irrelevant opinion as to the City's internal policies. Furthermore, Mr. Hurd's declaration is limited to discussing Mr. Marsh's involvement in *Paine* and is silent regarding the City's internal policies. *See* ECF No. 103-4. This is most telling considering that Mr. Hurd was the Deputy of the Special Litigation Unit and a Deputy of the Federal Civil Rights Litigation Division during Mr. Marsh's employment. *Id.* at ¶ 3. If Plaintiff was able to rebut Ms. Fronczak's declaration regarding Mr. Marsh's training and access to confidential and privileged materials, Mr. Hurd would be a logical choice. However, Mr. Hurd does not address anything in his declaration regarding internal training or City policies.

Plaintiff argues that Ms. Fronczak's declaration is deficient because she lacks the personal knowledge to lay the foundation for the facts she attests to. ECF No. 103 at 10. However, the City asked Ms. Fronczak to speak on the City's behalf in similar fashion to how a witness would testify for the City pursuant to Fed. R. Civ. Pro. 30(b)(6). In this fashion, Ms. Fronczak does not need to have personal knowledge in the manner Plaintiff argues. ECF No. 103 at 10. Ms. Fronczak's basis for her knowledge is that her declaration is the City's knowledge. Therefore, the declarations of

9

Mr. Nixa and Mr. Hurd do not save Mr. Marsh from the conflict in this case and Mr. Marsh should be disqualified.

### IV. Plaintiff's Response Shows that Mr. Marsh Already Shared Disqualifying Information to Co-Counsel and Therefore Co-Counsel Should Also Be Disqualified.

Mr. Marsh possessed and used privileged information to the City's detriment in violation of Rule 1.9(c). The problem is not that Mr. Marsh and co-counsel share office space or the feasibility of a conflicts wall. The issue is whether or not Mr. Marsh shared disqualifying information regarding the CIT program with co-counsel related to his previous representation of the City in *Paine*. Neither Mr. Marsh's, Mr. Hurd's, nor Mr. Henderson's declarations have any representations in them regarding the CIT program. ECF Nos. 103-1, 103-4, 103-6. All three of the declarations dance around the heart of the issue. Mr. Marsh denies discussing substantive *Monell* issues with co-counsel but spoke about "what is in the four corners of the complaint." ECF No. 103-1 at ¶ 21. Mr. Hurd admits that *Paine* concerned "officers' training with respect to mental health issues of pretrial detainees." ECF No. 103-4 at ¶ 4. Mr. Henderson frames his discussions with Mr. Marsh as about "in general terms, and about the publicly available information." ECF No. 103-6 at 6. If Mr. Henderson and Mr. Marsh did not discuss information regarding the CIT program, which is at the heart of this motion, they would have included it in their declarations. Plaintiff knew the City's arguments and what had to be addressed in her response. The fact that this simple piece of information is not included in either declaration shows that the information has already been shared and Mr. Marsh and co-counsel from Henderson Parks, LLC, should be disqualified.

### CONCLUSION

Wherefore, for the reasons stated above and set forth in Defendant City of Chicago's Motion to Disqualify, the City respectfully requests this honorable court disqualify Jordan Marsh

from representing Plaintiff in this matter, disqualify co-counsel from Henderson Parks, LLC, and grant any other relief this Court deems just and proper.

Dated: January 24, 2020　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　Mark A. Flessner
　　　　　　　　　　　　　　　　　　　　　　　　Corporation Counsel of the City of Chicago

　　　　　　　　　　　　　　　　　　　By:　　/s/ Maxwell Lisy　　　　　
　　　　　　　　　　　　　　　　　　　　　　Assistant Corporation Counsel


Jonathan Green, Assistant Corporation Counsel Supervisor
Bret Kabacinski, Assistant Corporation Counsel
Andrea Campbell, Assistant Corporation Counsel
City of Chicago, Department of Law
Federal Civil Rights Litigation Division
30 N. LaSalle Street, Suite 900
Chicago, Illinois 60602
312-742-1842 (Phone)
312-744-6566 (Fax)
Counsel for Defendant

## **CERTIFICATE OF SERVICE**

I, undersigned counsel, hereby certify that I served the above **DEFENDANT CITY OF CHICAGO'S REPLY IN SUPPORT OF ITS MOTION TO DISQUALIFY** upon all counsel of record via the Court's CM/ECF system on this 24th day of January, 2020.

By: /s/ Maxwell Lisy
      Assistant Corporation Counsel

Jonathan Green, Assistant Corporation Counsel Supervisor
Bret Kabacinski, Assistant Corporation Counsel
Andrea Campbell, Assistant Corporation Counsel
City of Chicago, Department of Law
Federal Civil Rights Litigation Division
30 N. LaSalle Street, Suite 900
Chicago, Illinois 60602
312-742-1842 (Phone)
312-744-6566 (Fax)
Counsel for Defendant